UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MOHAMED YAZID ZAGHIA<br>*Plaintiff* | CIVIL ACTION<br>NO.  20-619 |
| VERSUS | SECTION:  "H" (1) |
| COSTCO WHOLESALE CORP., ET AL.<br>*Defendant* | JUDGE JANE TRICHE MILAZZO |
| | MAGISTRATE JUDGE<br>JANIS VAN MEERVELD |

ORDER AND REASONS

Before the court are the Motions to Dismiss filed by the defendants. (Rec. Docs. 8, 20). On July 10, 2020, the court ordered that both motions would be taken under submission on July 22, 2020, and that plaintiff's opposition was due on July 15, 2020. Plaintiff has not filed a memorandum in opposition. Accordingly, the motions are deemed unopposed. Further, and for the following reasons, the court has determined that the motions have merit and they are hereby GRANTED. Plaintiffs' claims against the defendants are hereby dismissed with prejudice.

Background

This is an employment discrimination lawsuit. Plaintiff Mohamed Yazid Zaghia is a man of North African origin. He began working for Costco Wholesale Corporation ("Costco") in September 2015 in the membership department at a Costco store in New Orleans. At the end of 2017, Robert Armstrong took over as General Manager of the store. Apparently that is when Zaghia's problems at work began. He alleges that when he approached Armstrong to discuss plans he had with the prior manager to begin Zaghia's training for a management position, Armstrong told him that he did not care about agreements with the prior manager and that Zaghia had to earn

1

Armstrong's respect. Zaghia complains that Armstrong used fear and intimidation as a management style.

For example, Zaghia alleges that when he went to the store's concierge services on his free time to enforce a warranty claim on electronics he had purchased at the store, Armstrong threatened him with a writeup. Zaghia alleges that in April 2018, he was in the store as a customer on his day off and he made a complaint about the behavior of another employee. He alleges that Armstrong threatened him with a writeup and allowed the other employee (who was "demographically similar to Mr. Armstrong") the opportunity to make a complaint but did not allow Zaghia to do so. He says he wrote a letter to be delivered to his file, but that Armstrong misplaced the letter. Thereafter, Zaghia reported two membership employees for fabrication of membership data to Armstrong and also reported to Armstrong his concerns about store shrinkage and other problems. According to Zaghia, Armstrong told him to mind his own business. Zaghia also alleges that he was not allowed to pray at work when he requested to do so.

In August 2018, Zaghia was injured while celebrating Eid, a religious holiday. He alleges that he sought medical treatment and was released to return to work after a week, but Armstrong refused to take the release or make accommodations, forcing Zaghia onto medical leave through October 2018. Zaghia alleges that when he returned to work, he was written up for falsification of membership data and was immediately suspended. In November 2018, Zaghia was told by human resources that he could to return to work, but Armstrong kept him on suspension while he continued to conduct his own investigation. On November 30, 2018, Armstrong terminated Zaghia's employment.

Following his termination, Zaghia filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). He received a right to sue letter on September

19, 2019. On December 18, 2019, he filed suit in state court against Costco, Armstrong, and an unnamed "John Doe." He claims that he was wrongfully terminated, that he was discriminated against because he is of North African origin, and that his termination was retaliatory because he had complained about activities of other employees. He alleges defendants are liable for wrongful termination, retaliatory discharge, intentional infliction of emotional distress, lost employment opportunities, lost wages, and other damages. Costco removed on February 20, 2020, invoking this court's federal question jurisdiction based on Zaghia's discrimination claims and, additionally, the court's diversity jurisdiction. Costco promptly filed a Motion to Dismiss.

The court set a telephone status conference for April 9, 2020, to determine whether Armstrong, who remained employed by Costco at the time of removal, had been served or had waived service. Counsel for Zaghia failed to appear and was ordered to provide a written status report on whether Zaghia intended to pursue Armstrong and John Doe as defendants and if so the status of service. In the status report, Zaghia indicated that he intends to pursue Armstrong as a defendant but had been unable to locate him since he moved from New Orleans. He also reported that "John Doe" was a placeholder and could be removed as a defendant until such time as discovery reveals additional parties.[1] Zaghia's counsel also reported that the court's docket reflected an old email address for her (even though her information through PACER had been updated on other matters before this court). She reported that her email address has now been resolved. She reported that she would file a motion to extend deadlines and for additional time to respond to the defendant's 12(b)(6) motion.

---

[1] For avoidance of doubt, the court construes this representation as a voluntary dismissal of the unnamed, unidentified defendant. In any event, Zaghia's complaint contains no allegations directed at any unknown individuals and has, therefore, failed to state a claim against such a defendant.

On May 20, 2020, the court set this matter on its call docket because there was no evidence of service on Armstrong. An executed waiver of service was filed into the record on June 17, 2020, and the call docket was deemed satisfied. The parties consented to proceed before the magistrate judge and this matter was referred to the undersigned for further proceedings. On July 9, 2020, Armstrong filed a motion to dismiss, adopting Costco's motion to dismiss. The court ordered Zaghia's opposition to both motions to dismiss be filed by July 15, 2020. No memorandum in opposition was filed.

Defendants argue that Zaghia's claims must be dismissed because he has failed to plead plausible claims. They argue that Zaghia's race and national origin claims must be dismissed because he has not plead his race and has failed to plausibly plead that he was treated differently than similarly situated employees based on his race or national origin. They argue that Zaghia's disability discrimination claim should be dismissed because he fails to plead that he was a qualified individual with a disability or that he was subjected to an adverse employment action based on his alleged disability. They argue that his religious discrimination claim should be dismissed because he does not plead that he was subjected to an adverse employment action as a result of his alleged request to pray at work. They argue that Zaghia's retaliation claims should be dismissed because he does not plead that he engaged in protected activity and does not state facts sufficient to plausibly plead a causal connection between any alleged protected activity and his termination. They argue that Zaghia's hostile work environment claim should be dismissed because he does not plead facts that plausibly support a viable hostile work environment claim under Fifth Circuit precedent. They argue that Zaghia's Louisiana Whistleblower retaliation claim should be dismissed because he does not plead that Costco committed an actual violation of Louisiana law. They argue that his intentional infliction of emotional distress claim should be dismissed because

4

he does not plead sufficient facts to plausibly support finding "extreme and outrageous" conduct under Louisiana law.

Defendants further argue that Zaghia's disability claims under the Americans with Disabilities Act ("ADA") and hostile work environment claim under either the ADA or Title VII should be dismissed because he failed to exhaust his administrative remedies. They say he did not include sufficient allegations relating to those claims in his charge of discrimination with the EEOC.

Defendants also argue that Zaghia's disability and hostile work environment claims under Louisiana Employment Discrimination Law ("LEDL") should be dismissed as time-barred because this lawsuit was filed more than one year after he was terminated and the six month suspension period is inapplicable to these claims. They argue that his IIED claims have also prescribed.

Finally, Armstrong argues that Zaghia's claims against him under Title VII, the ADA, the LEDL, and the Louisiana whistleblower statute must be dismissed because he cannot be held liable as an individual under any of those statutes.

<u>Law and Analysis</u>

1. *Standard for Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." <u>Cuvillier v. Taylor</u>, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing

them in the light most favorable to the plaintiff." <u>In re</u> Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id</u>. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

   2.   *Failure to state a claim*

      a.   *Race and National Origin Discrimination Claims*

"[T]o establish a prima facie case of discrimination on the basis of race or national origin, a plaintiff must show he or she was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." <u>Abarca v. Metro. Transit Auth.</u>, 404 F.3d 938, 941 (5th Cir. 2005). Although a plaintiff at the motion to dismiss stage need not submit evidence to establish his case,  he must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." <u>Chhim v. Univ. of Texas at Austin</u>, 836 F.3d 467, 470 (5th Cir. 2016).

First, defendants argue that by alleging only that he is of North African Origin,  Zaghia has failed to allege his race. Therefore, defendants argue, Zaghia cannot state a claim for race discrimination. They cite cases holding that "national origin" and "race" are not synonymous. <u>Kun</u>

v. Finnegan, Henderson, Farabow, Garrett & Dunner, 949 F. Supp. 13, 19 (D.D.C. 1996) ("[R]ace and national origin are ideologically distinct under Title VII."); Roach v. Dresser Indus. Valve & Instrument Div., 494 F. Supp. 215, 216 (W.D. La. 1980) ("The legislative history enunciates precisely that a person's national origin has nothing to do with color, religion, or race."). The court agrees that the complaint fails to state a claim for race discrimination because Zaghia has failed to allege his membership in a protected class based on race.

Second, defendants argue that both Zaghia's race and national origin discrimination claims must be dismissed because he has failed to allege facts showing that he was treated less favorably than employees of a different race or national origin. Specifically, they point out that Zaghia has alleged that only he was disciplined for breaking the rules but he has not alleged the race or national origin of those who were not disciplined nor has he alleged that they were otherwise similarly situated to him.

The court notes that Zaghia does allege that when he was threatened with a writeup in April 2018 when he complained about another employee while in the store as a customer, the other employee who was "demographically similar to Mr. Armstrong" was allowed to make a complaint but Zaghia was not. However, Zaghia does not allege elsewhere that Mr. Armstrong's demographics were different from his own. Moreover, even if the court assumed this to be the case, Zaghia has not addressed how he and the other employee were similarly situated. The court agrees with the defendants that Zaghia has failed to plead sufficient facts to find that he was treated less favorably than similarly situated employees of a different race or national origin.

Accordingly, Zaghia's claims for race and national origin discrimination must be dismissed for failure to state a claim.

b.  *Disability Discrimination Claim*

"To establish a *prima facie* discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; (3) that he was subject to an adverse employment decision on account of his disability." Zenor v. El Paso Healthcare Sys., Ltd., 176 F.3d 847, 853 (5th Cir. 1999). The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)." 42 U.S.C. § 12102(1). The referenced paragraph (3) provides that a person is regarded as having an impairment if he "establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," but not if the impairment is "transitory and minor." Id. §12102(3). "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." Id. "Adverse employment actions consist of 'ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating.'" Lumar v. Monsanto Co., 395 F. Supp. 3d 762, 781 (E.D. La. 2019) (quoting Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004)).

Defendants argue that Zaghia's disability discrimination claim must be dismissed because he only alleges that he suffered an injury and that he was almost immediately released to return to work. They submit that he does not plausibly plead that he has a disability as defined by the ADA.

The court agrees. Zaghia alleges that he was injured, that he sought medical treatment, and that he was released to return to work but that instead of making accommodations, Costco forced him onto medical leave. He does not allege his injury with any specificity such that it could be determined how it affected his major life activities. Nor does he allege any facts to show how he

might have been regarded as having such an impairment. Accordingly, Zaghia has failed to state a claim for disability discrimination.

The court does not address defendants' additional argument that Zaghia has not alleged any adverse employment action with respect to any disability.

### c.   Religious discrimination claim

"Under Title VII . . . a covered employer has the 'statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship.'" Eversley v. MBank Dallas, 843 F.2d 172, 175 (5th Cir. 1988) (quoting Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 75 (1977)). A plaintiff "makes out a prima facie case of religious discrimination by proving: (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." Turpen v. Missouri-Kansas-Texas R. Co., 736 F.2d 1022, 1026 (5th Cir. 1984). If the employee establishes a prima facie case, "the burden shifts to the employer to show that it was unable reasonably to accommodate the plaintiff's religious needs without undue hardship." Id.  at 1026

Defendants here argue that Zaghia's religious discrimination claims must be dismissed because he has not alleged that he suffered any adverse employment action as a result of his request to pray at work. They submit that his generalized assertion that he was not allowed to pray at work when he requested to do so is insufficient. They cite Stallworth v. Singing River Health Systems, where the court dismissed plaintiff's religious discrimination claim on summary judgment, finding that there was no evidence that she had a bona fide religious belief requiring her to pray at certain times or that she was unable to do so because of an employment requirement, nor was there

evidence that she informed her supervisors that she needed to take particular break times to pray. No. 1:10-cv-123, 2011 WL 2532473, at *4 (S.D. Miss. June 24, 2011).

While Zaghia is not required to support his claims with evidence at this stage, the court nonetheless finds that the allegations in his complaint do not give rise to a plausible claim for relief. He alleges only that he was not allowed to pray at work when he requested to do so. He does not allege that he was disciplined for failing to comply with an employment requirement. He does not allege that he suffered any adverse employment action as a result of his requests. Zaghia has failed to state a claim for religious discrimination.

> ### d.   *Retaliation claims.*

Under Title VII, it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). "To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she participated in a . . . protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009). The same elements apply to a retaliation claim under the ADA or LEDL. See Smith v. Amedisys Inc., 298 F.3d 434, 448 (5th Cir. 2002); Seaman v. CSPH, Inc., 179 F.3d 297, 301 (5th Cir. 1999) (ADA). The Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." Davis v. Dallas Indep. Sch. Dist., 448 F. App'x 485, 493 (5th Cir. 2011). "[I]f the conduct complained of by a plaintiff had nothing to do with race, color, religion, sex or national origin, [plaintiff] cannot maintain a retaliation claim under Title VII." Wesley v. Scobee Foods, Inc., No. 3:12-CV-1836-K, 2013 WL 3324092, at *6 (N.D. Tex. June 28, 2013).

Defendants argue that Zaghia does not state a plausible retaliation claim because he does not allege that he engaged in activity protected by Title VII, the ADA, or the LEDL. The court agrees. Zaghia alleges that he reported two employees for falsifying membership data. This complaint cannot be construed as a protected activity because Zaghia was not complaining about discrimination. Zaghia alleges that he wrote a letter to be placed in his personnel file after the April 2018 incident when Zaghia was in the store as a customer and complained about another employee. Zaghia has not alleged the contents of the letter. The court cannot simply infer that the letter complained of discrimination under Title VII, the ADA, and/or the LEDL. Further, as defendants point out, Zaghia does not allege any adverse employment action resulting from the letter, which he alleges was "misplaced" by Armstrong. The termination Zaghia complains of did not occur until six months later in November 2018. See Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc., 535 F. App'x 348, 354 (5th Cir. 2013) ("Five and six month gaps, respectively, between a protected activity and an adverse employment action, are not "very close" for the purpose of establishing a causal link  . . . ."). Zaghia has failed to state a claim for retaliation.

e.   *Hostile work environment claims.*

To establish a hostile-work-environment claim,  the employee must establish that

(1) [he] belongs to a protected group; (2) [he]   was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002). Harassment affects a "term, condition, or privilege" of employment when it is so severe or pervasive that it alters the conditions of employment and "create[s] an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982)).

11

In determining "whether a hostile work environment existed, a court must consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Moore v. United Parcel Serv., Inc., 150 F. App'x 315, 319 (5th Cir. 2005) (quoting Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)). An isolated offensive utterance is not sufficient to demonstrate a hostile work environment due to a protected characteristic. Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir. 1996) (quoting DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 595 (5th Cir. 1995)) ("[T]he 'mere utterance of an . . . epithet which engenders offensive feelings in an employee' is insufficient, without more, to support Title VII liability."); see Jones v. Cont'l Cuisine, Inc., 353 F. Supp. 2d 716, 720–21 (E.D. La. 2004) (finding the plaintiff had not established a  race based hostile work environment where the only evidence to support a racially hostile work environment was a manager's alleged use of the "n word" during one meeting).  A hostile work environment must be found to "be both objectively and subjectively offensive." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).

Defendants argue that Zaghia's hostile work environment claims must be dismissed because he does not plead that he was subjected to unwelcome harassment based on his membership in a protected class and further, even if he had, the facts allege do not amount to severe and pervasive harassment. The court agrees. Zaghia mentions "unwelcome harassment" in the introductory paragraph of his complaint and he alleges at paragraph XVI that he believes his termination was retaliation for his complaints concerning a hostile and inappropriate work environment. It is unclear what "harassment" he is referring to. Maybe he is referring to Armstrong's alleged "managerial style of fear and intimidation." Maybe he is referring to Armstrong threatening to write him up or refusing to allow him to file a complaint when he came

to the store as a customer on his day off. Or maybe he is referring to Armstrong suspending Zaghia for falsification of membership data. Zaghia has not alleged that any of these incidents were suffered because of his race, national origin, or religion. Critically though, even if he had, these incidents do not amount to the type of severe and pervasive harassment necessary to state a hostile work environment. These isolated incidents can hardly be described as offensive or harassing at all: there is no allegation of a physical threat, that Zaghia was humiliated, or that Armstrong's comments interfered with Zaghia's work. Zaghia has failed to state a claim for hostile work environment.

      *f.   Whistleblower retaliation claim.*

To state a claim under Louisiana's whistleblower statute, a plaintiff must show that

> (1) [Defendant] violated the law through a prohibited workplace act or practice; (2) she advised [Defendant] of the violation; (3) she threatened to disclose [or disclosed] the practice; and (4) she was fired as a result of her refusal to participate in the unlawful practice or threat to disclose the practice.

Kell v. Iberville Bank, 352 F. Supp. 3d 650, 661–62 (E.D. La. 2018) (quoting Hale v. Touro Infirmary, 2004-0003 (La. App. 4 Cir. 11/3/04), 886 So. 2d 1210, 1216) (alteration in original). Plaintiff must establish that the defendant "committed an *actual* violation of [Louisiana] law." Herster v. Bd. of Supervisors of Louisiana State Univ., 887 F.3d 177, 187 (5th Cir. 2018) (quoting Wilson v. Tregre, 787 F.3d 322, 326 (5th Cir. 2015)) (emphasis and alteration in original).

Defendants argue that Zaghia has failed to state a claim under the Louisiana whistleblower statute because he has not alleged that Costco committed an actual crime. Indeed, he only alleges that he complained that employees were falsifying membership data and that he had concerns about store shrinkage. But he does not allege any law violated by Costco or Armstrong. Nor does he allege that he threatened to disclose the alleged falsification of membership data or shrinkage. Zaghia has failed to state a claim under Louisiana's whistleblower statute.

13

g.   *Intentional infliction of emotional distress*

To prove her claim for intentional infliction of emotional distress ("IIED") under Louisiana law, the plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991). The Louisiana Supreme Court has explained that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Id.  Thus, in the employment context, courts have held that conduct, "even if calculated to cause some degree of mental anguish, will rarely be so severe that it will rise to the level of 'outrageous conduct.'" Barber v. Marine Drilling Mgmt., Inc., No. CIV.A. 01-1986, 2002 WL 237848, at *8 (E.D. La. Feb. 15, 2002).

The allegations in Zaghia's complaint simply do not rise to the level of extreme and outrageous conduct. His claim for intentional infliction of emotional distress must be dismissed.

3.   *Failure to Exhaust Administrative Remedies and/or Time Bars*

In addition to arguing that Zaghia has failed to state a claim for all causes of action he has raised, defendants argue that certain of Zaghia's claims are barred because he failed to exhaust administrative remedies. They also argue that Zaghia's IIED claim has prescribed. It appears that at least some of defendants' argument regarding prescription have merit.  However, in light of the dismissal of the claims on their merits above, the court declines to address defendants' prescription

defenses. Similarly, defendants' failure to exhaust claims appear to be well-founded, but the court declines to reach them in light of the above.

4. *Zaghia's claims against Armstrong as an individual*

Finally, as to Armstrong's arguments that Zaghia's claims against him under Title VII, the ADA, the LEDL, and the Louisiana whistleblower statute must be dismissed because he cannot be held liable as an individual under any of those statutes, these too appear to be well-founded.[2] However, in light of the dismissal of the claims on their merits above, the court declines to address them in detail.

## Conclusion

In conclusion, the court has found that Zaghia has failed to state a claim for race or national origin discrimination, disability discrimination, religious discrimination, retaliation, hostile work environment under federal or state law, nor has he stated a claim under the Louisiana whistleblower statute or for intentional infliction of emotional distress. Further, he cannot state a claim for individual liability against Armstrong under Title VII, the ADA, the LEDL or Louisiana's whistleblower statute. Accordingly, defendants Motions to Dismiss are GRANTED. Zaghia's complaint against the defendants is hereby dismissed with prejudice.

---

[2] "[R]elief under Title VII is only available against an employer, not an individual supervisor or fellow employee." Umoren v. Plano Indep. Sch. Dist., 457 F. App'x 422, 425 (5th Cir. 2012) (quoting Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 (5th Cir. 2003)).  "[I]ndividuals are not subject to liability under Title I of the ADA." Lefort v. Lafourche Par. Fire Prot. Dist. No. 3, 39 F. Supp. 3d 820, 825 (E.D. La. 2014) (quoting Franklin v. City of Slidell, 936 F. Supp. 2d 691, 703 (E.D. La. 2013)).  Nor is an individual typically considered an "employer" under the LEDL, which defines employer as  one "receiving services from an employee and, in return, giving compensation of any kind to an employee."  Farmer v. Mouton, No. CV 16-16459, 2017 WL 1837812, at *9 (E.D. La. May 8, 2017) (quoting La Rev. Stat. §23:302(2)). Further, "courts have recognized that because a supervisor is neither an employer in the traditional sense, nor an employer under the LEDL, a supervisor is not an employer under the Louisiana Whistleblower Act." White v. Slaughter, No. CV 17-1022, 2017 WL 6507699, at *6 (W.D. La. Nov. 15, 2017), report and recommendation adopted, No. CV 17-1022, 2017 WL 6503995 (W.D. La. Dec. 19, 2017).

New Orleans, Louisiana, this 12th day of August, 2020.

Janis van Meerveld
United States Magistrate Judge